AUDIO DATA CORPORATION and T. Van De Wall, Appellants,

v.

John E. MONUS, James J. Gillan, Barbara J. Mooney, and Delos S. Pappas, Appellees.

No. 05–90–00059–CV.

Court of Appeals of Texas, Dallas.

Jan. 18, 1990.

Rehearing Denied April 9, 1990.

Joseph W. Geary, Kathleen E. Bagwell, Dallas, for appellants.

Talmage Boston, for appellees.

Before WHITHAM, STEWART and OVARD, JJ.

## OPINION

STEWART, Justice.

John E. Monus, James J. Gillan, Barbara J. Mooney, and Delos S. Pappas (Distributors), along with other plaintiffs dismissed prior to trial, sued Audio Data Corporation (ADC), A.J.L. Moritz, Jr., T. Van de Wall, International Consultants Netherlands, B.V. (ICN), and Frances K. Moritz for fraud, violation of the Texas Business Opportunity Act, violations of the Texas Deceptive Trade Practices–Consumer Protection Act, breach of contract, and unjust enrichment, involving franchises for high-speed audio tape duplicating machines. Prior to trial, the trial court entered default judgments on liability as discovery sanctions against ADC, A.J.L. Moritz, Jr., and T. Van de Wall (also referred to as the ADC parties). The trial court also entered a default judgment on liability against ICN prior to trial because it failed to file an answer. There was a bench trial on damages only as to the ADC parties and ICN and on both liability and damages as to Frances K. Moritz. The trial court did not render a judgment for damages against Frances K. Moritz, and she has not joined in this appeal. The trial court rendered judgment against the ADC parties and ICN jointly and severally. Only the ADC parties have appealed; consequently the judgment is final as to ICN. For the reasons that follow, we reverse and remand as to ADC and Van de Wall.

In their first point of error, the ADC parties contend that the trial court erred in proceeding to trial only on the issue of damages as to them because their answers were struck during the pendency of the automatic bankruptcy stay. In their second point of error, the ADC parties contend that the trial court erred in proceeding to trial on plaintiffs' second amended original petition because the Moritz and ADC bankruptcies were filed before the second amended petition was filed, rendering it void as a proceeding undertaken in violation of the automatic bankruptcy stay. In their sixth point of error, the ADC parties contend that the trial court erred in entering judgment against them because judgment was entered after a trial as to the issue of damages only as a result of the trial court's invalid entry of defaults against the ADC parties during the pendency of the automatic bankruptcy stay.

Disposition of this appeal centers on two separate voluntary petitions in bankruptcy filed by Moritz and ADC, respectively. We chart below critical dates and language of the important bankruptcy court orders.

**Moritz**
(1) April 4, 1988, petition filed
(2) May 23, 1988, case dismissed

(3) Order's language:
"It is accordingly ORDERED that this case be and the same is hereby DISMISSED without prejudice for want of prosecution, *thereby lifting all stays.*" (emphasis added).

**ADC**
May 16, 1988, petition filed
June 24, 1988, automatic stay provisions modified
Order's language:
"ORDERED AND ADJUDGED that the automatic stay provisions are modified to allow the "Plaintiffs" [Distributors] *to proceed to trial and judgment against Debtor,* Audio Data Corporation. Audio Data Corporation will comply with the Texas State Court discovery procedures and will designate a corporate representative to do so and the rules of discovery in the Texas State Courts, including sanctions, shall apply. However, Plaintiffs may not take any further discovery from Audio Data Corporation. Once Plaintiffs have liquidated their judgment against Audio Data Corporation, if at all, they shall return to this court *for further proceedings.*" (emphasis added).

---

These critical dates and language of the bankruptcy court orders present two principal issues: first, whether (a) actions taken by the Distributors, Monus, Gillan, Mooney, and Pappas, and (b) actions taken by the trial court during the pendency of the bankruptcy stays are void or voidable; second, if voidable, whether actions taken by the trial court under the facts of the present case are proper.

█ In order to answer the first inquiry, we keep the following actions of the Distributors and the trial court before us:

April 22, 1988—Distributors' first amended original petition filed purporting to add allegations of alter ego liability against Moritz;

April 25, 1988—Distributors' motion to compel document production presented for hearing and the order entered by the trial court of that date ordering production of documents;

April 28, 1988—Pretrial discovery noticed for Moritz and ADC;

May 4, 1988—Pretrial discovery noticed for Van de Wall;

May 6, 1988—Distributors' second amended original petition filed;

May 9, 1988—Distributors' motion for sanctions and order for rule to show cause against Van de Wall filed;

May 10, 1988—Pretrial discovery noticed for Moritz and ADC;

May 11, 1988—Distributors' motion for sanctions and order for rule to show cause against ADC and Moritz filed;

May 16, 1988—Order entered by the trial court imposing sanctions against ADC and Moritz, striking their answers and entering default judgments against them; and

May 16, 1988—Order entered by the trial court imposing sanctions against Van de Wall, striking her answer and entering a default judgment against her.

Thus, we reach the threshold question whether the above actions by the Distributors and the trial court are void, in the strict sense of that word, or merely voidable. It is undisputed that the above actions were taken without knowledge of either bankruptcy's automatic stay. The ADC parties maintain that Texas courts have elected to adopt the rule that actions taken during the pendency of a bankruptcy stay are void *ab initio,* not merely voidable. *Continental Casting Corp. v. Samedan Oil Co.,* 751 S.W.2d 499, 501 (Tex.1988) (applying setoff against debtor in violation of stay was void, not voidable); *Dyer v. Weedon,* 769 S.W.2d 711, 712–13 (Tex.App. —Waco 1989, no writ) (mandatory tempo-

rary injunction dispossessing tenants in favor of landlord-debtor was "Null and Void" even though parties had "skirmished in both justice and district courts" in disregard of the stay); *Huddleston v. Texas Commerce Bank–Dallas, N.A.*, 756 S.W.2d 343, 345–46 (Tex.App.—Dallas 1988, writ denied) (post-petition foreclosure sale void even though lender had no knowledge of bankruptcy filing).

The Distributors acknowledge the general rule that acts in violation of the automatic stay are void as to acts to dispossess the bankrupt debtor of his property rights or as to acts which disrupt the debtor's capacity to reorganize. However, they maintain that this general rule is not inflexible and that, in situations involving only technical violations of the stay which do not dispossess the debtor of property, stay violations are voidable, not void. *In re Sapp*, 91 B.R. 520, 522 (Bankr.E.D.Mo.1988); *In re Brooks*, 79 B.R. 479, 480 (Bankr. 9th Cir. 1987); *In re Oliver*, 38 B.R. 245, 248 (Bankr.D.Minn.1984); *In re Fuel Oil Supply and Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr.N.D.Tex.1983); *In re Willard*, 15 B.R. 898, 900 (Bankr. 9th Cir.1981); *Morgan Guar. Trust Co. v. American Sav. & Loan*, 804 F.2d 1487 (9th Cir.1986).

The Distributors also rely on the recent Fifth Circuit case of *Sikes v. Global Marine*, 881 F.2d 176 (5th Cir.1989), in which the court held that "the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void. We agree that the 'characterization of every violation of section 362 as being absolutely void is inaccurate and overly broad.' *Fuel Oil Supply*, 30 B.R. at 362." *Id.* at 178. The *Sikes* court then held that the filing of a complaint in an unknowing violation of the automatic stay is voidable, not void. *Id.* at 179; *Cissne v. Robertson*, 782 S.W.2d 912, 919 (Tex.App.—Dallas 1989, n.w.h.). We conclude that, if filing of a complaint in an unknowing violation of the automatic stay is voidable, not void, then by analogy, each of the above actions is likewise voidable and not void. We reach this conclusion because each of the above actions is, as is the filing of a com-

plaint in federal court, but a preliminary step taken to judicially reach the bankrupt's estate outside federal bankruptcy procedures. Accordingly, we conclude that actions taken by the Distributors and actions taken by the trial court during the pendency of the bankruptcy stays are voidable.

Specific to disposition of this appeal, we conclude that the May 16, 1988 order of the trial court imposing sanctions against ADC and Moritz, striking their answers, and entering default judgments against them is, as is the filing of a complaint in federal court, but a preliminary step taken to judicially reach the bankrupt's estate outside federal bankruptcy procedures. Hence, we conclude that the default judgments entered against Moritz and ADC on May 16, 1988, are voidable and not void.[1] We reach this conclusion because the Moritz stay was not lifted until May 23, 1988, and the ADC stay was not modified until June 24, 1988, both dates subsequent to the May 16, 1988 default judgments.

Next, we turn to our second principal issue: to wit, whether on October 13, 1988, the trial court could reaffirm the May 16, 1988 judgments against Moritz and ADC following the bankruptcy courts' orders of May 23, 1988, and June 24, 1988. (Again, we reserve the question as to Van de Wall.) The answer to the inquiry hinges on what the bankruptcy courts intended by their orders. Hence, we must look to the applicable bankruptcy court order to determine (a) if the Moritz bankruptcy court intended to *validate* the trial court's May 16, 1988 sanctions and default judgment against Moritz and (b) if the ADC bankruptcy court intended to *validate* the trial court's May 16, 1988 sanctions and default judgment against ADC. *See Sikes*, 881 F.2d at 179; *Cissne*, 782 S.W.2d at 919. The answers must be found in the bankruptcy courts' orders.

■ As to Moritz, we conclude that the Moritz bankruptcy court did not intend

---

**1.** We address later the trial court's May 16, 1988 order imposing sanctions and entering a default judgment against Van de Wall.

to validate, because its order of May 23, 1988, (1) stands silent as to the present case, and (2) does not "annul" the stay. *Sikes* tells us why "annulling" is important. In section 362(d) of the Bankruptcy Code, Congress empowered the bankruptcy court to grant relief from the automatic stay "by terminating, annulling, modifying or conditioning" the stay. 11 U.S.C. § 362(d) (1982). The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay. The power to annul authorizes the bankruptcy court to validate actions taken subsequent to the impressing of the 362(a) stay. *Sikes*, 881 F.2d at 178. In so holding, *Sikes* quotes 2 COLLIER'S BANKRUPTCY MANUAL, § 362.06 (3rd ed. 1983), as follows:

> In addition to the obvious power to "terminate" the stay, [§ 362(d)] also gives *the bankruptcy court* the power to "annul" the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and *thus validate actions* taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative only from the date of its entry.

*Sikes*, 881 F.2d at 179 (emphasis added); *see also Cissne*, 782 S.W.2d at 919. In the present case, we conclude that the Moritz bankruptcy court's language ordering the case dismissed, "thereby lifting all stays," shows an intent to "terminate," not "annul," any stay implicit in or derived from the order for relief resulting from the filing of the voluntary petition on April 4, 1988. Therefore, the Moritz bankruptcy court's May 23, 1988 order has no retroactive operation, and it terminates the stay only from the date of its entry on May 23, 1988. Consequently, we conclude that the trial court could not reaffirm its May 16, 1988 judgment against Moritz even if the trial court was authorized to do so. As we conclude from our disposition of the ADC parties' fourth and fifth points of error, the trial court was not authorized to do so.

From this it follows that the trial court's May 16, 1988 sanctions and default judgment against Moritz is inoperative. We sustain the first and sixth points of error as applied to Moritz.

■ By these same authorities and reasoning, what we have said above is also applicable to the Distributor's filing of their second amended original petition during the pendency of the Moritz stay. As a result, the Distributors second amended original petition filed May 6, 1988, is inoperative as to Moritz. We sustain the second point of error as applied to Moritz. We overrule the second point of error as to ADC and Van de Wall, because the ADC stay was not in effect at the time the second amended petition was filed.

We now consider if the ADC bankruptcy court intended to validate the trial court's May 16, 1988 sanctions and default judgment against ADC. At this point, it must be noted that two events occurred on May 16, 1988. One event was the filing of ADC's voluntary petition in bankruptcy. The second event was the trial court's sanctions and default judgment against ADC. It is undisputed that the first of the two events to occur was the filing of ADC's petition in bankruptcy. Thus, the Distributors concede that the automatic bankruptcy stay was effective before the trial court's sanctions were imposed and default judgment entered against ADC. Hence, as was the situation pertaining to Moritz, a bankruptcy stay existed before the trial court's sanctions and default judgment against ADC.

■ As to ADC, we conclude that the ADC bankruptcy court did not intend to validate, because the ADC bankruptcy court's order of June 24, 1988, does not "annul" the stay. Instead, the ADC bankruptcy court's order allows the Distributors to proceed to trial against ADC. We interpret this language to mean "proceed" both as to liability and damages. Indeed, in "proceeding," ADC is ordered to comply with discovery sought by the Distributors and if ADC fails to do so, *then* discovery sanctions will apply. We conclude, therefore, that the ADC bankruptcy court's lan-

guage should be construed as "terminating," not as "annulling," any stay implicit in or derived from the order for relief resulting from the filing of the voluntary petition on May 16, 1988. It follows, therefore, that the ADC bankruptcy court's June 24, 1988 order has no retroactive operation, but terminates the stay only from the date of its entry on June 24, 1988. We therefore conclude that the trial court could not reaffirm its May 16, 1988 judgment against ADC even if the trial court was authorized to do so. As stated above, we conclude in our disposition to the ADC parties' points four and five that the trial court was not authorized to do so. Consequently, the trial court's May 16, 1988 sanctions and default judgment against ADC is inoperative. We sustain the first and sixth points of error as applied to ADC.

■ We now consider certain points of error asserted on behalf of Van de Wall. Van de Wall claims the benefit of the bankruptcy stays obtained by Moritz and ADC. She relies on section 362(a)(1) and (a)(3) of the Bankruptcy Code. Admittedly, Van de Wall is a nonbankrupt codefendant. While the general rule is that a stay under section 362(a)(1) of the Bankruptcy Code is not available to nonbankrupt codefendants, in very limited situations a section 362(a)(1) stay may apply to actions against nonbankrupt defendants. *S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 (5th Cir.1987); *Cissne*, 782 S.W.2d at 925. Such a situation exists when the debtor and nonbankrupt are closely related or "when there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *S.I. Acquisition, Inc.*, 817 F.2d at 1148 (quoting with approval *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 999 (4th cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)); *Cissne*, 782 S.W.2d at 924–25.

■ Nevertheless, in the present case, we focus not on section 362(a)(1), but instead upon section 362(a)(3) providing a stay, applicable to all entities, of:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(3). The debtor's estate is "comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). The term "all legal and equitable interests of the debtor in property" includes rights of action which are bestowed by either federal or state law. *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1149.

In *S.I. Acquisition*, an alter ego case, the court distilled three guiding principles pertaining to section 362(a)(3):

> (1) a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor;
>
> (2) a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and
>
> (3) in applying the above rules we do so by
>
> keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly-situated creditors.

*S.I. Acquisition, Inc.*, 817 F.2d at 1150. Based upon these principles, the Fifth Circuit has recognized that a section 362(a)(3) stay applies to nondebtor defendants, thereby preventing a creditor from continuing to pursue a cause of action against such defendants: (1) under the Texas Fraudulent Transfers Act, *In Re Mortgage America Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983); (2) under the corporate trust fund doctrine or denuding of assets, *id.* at 1277; and (3) under the remedy of alter ego, *S.I. Acquisition, Inc.*, 817 F.2d at 1153. The Texas Fraudulent Transfer Act is not involved in this case, but Van de Wall contends that the second and third types of actions are.

In their brief, the Distributors state: "while the remedy of alter ego is included as a basis for liability of the individual

[Van de Wall], this is not the sole basis for [her] liability." Thus, aside from allegations made in their trial pleadings, we have the Distributors' word to this Court that there is an alter ego relationship between ADC and Van de Wall. Moreover, the trial court, in its findings of fact, found that Van de Wall was individually liable under theories of alter ego, controlling person and denuding of assets (corporate trust fund). Claims of denuding of assets and alter ego are rights of action belonging to the corporation involved. *In Re Mortgage America Corp.*, 714 F.2d at 1277; *S.I. Acquisition, Inc.*, 817 F.2d at 1153. Thus, these claims asserted by the Distributors against Van de Wall belonged to ADC and, once ADC filed its petition for bankruptcy, these claims became "property of the estate" of the debtor, ADC, to which the ADC automatic stay was applicable. We conclude, therefore, that under section 362(a)(3) the ADC automatic stay applied to the benefit of the nonbankrupt codefendant Van de Wall. Hence, the trial court's May 16, 1988 sanctions and default judgment against Van de Wall is also inoperative.

Further, this conclusion is supported by the general policies of the Bankruptcy Code. We reason that to allow the Distributors' action to proceed would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly. If the Distributors' action is not stayed, they would collect their claims from a pool of assets that should be available to all creditors. *See S.I. Acquisition, Inc.*, 817 F.2d at 1153. In addition, the unchecked prosecution of the Distributors' action would abridge the general policy of giving the debtor, ADC, and its asserted control person, Van de Wall, the opportunity to reorganize ADC's finances. Since the control person, Van de Wall, would certainly be actively opposing the Distributors' action, her time and efforts in revamping ADC in bankruptcy would be restricted. *Id.* at 1154. Moreover, if the Distributors' actions based upon alter ego and denuding of assets may proceed completely outside of bankruptcy, then any creditor of ADC may do likewise. The result is a rush to judgment and potential conflict in judg-

ments. Problems of collateral estoppel and unfair distribution of debtor assets would abound. *Id.* We sustain the first and sixth points of error as applied to Van de Wall.

■ In their fourth and fifth points of error, ADC, Moritz, and Van de Wall assert trial court error in reaffirming by order of October 13, 1988, the sanctions and default judgments imposed and entered against them on May 16, 1988. We agree. The Distributors, however, argue that if trial court actions are voidable and not void, then the trial court is authorized to validate those actions once the bankruptcy stays are lifted or modified. Although we have concluded that the trial court's May 16, 1988 orders are voidable as to Moritz, ADC, and Van de Wall, we disagree with the Distributors' argument. The "voidable" concept has nothing to do with *this* trial court's authority. Instead, the "voidable" concept bears on the right of the bankruptcy court to allow the lifting of its stay to operate retroactively to the date of filing of the petition which gave rise to the stay. *See Sikes*, 881 F.2d at 178 (quoting COLLIER at 179). Therefore, merely because the trial court's May 16, 1988 orders imposing sanctions and entering default judgments as to the ADC parties are voidable, it does not follow that the trial court is allowed to reaffirm voidable actions it took in violation of the stays. In short, "voidable" determines a permitted action by the *bankruptcy court*, not the trial court. We sustain the fourth and fifth points of error as applied to the ADC parties. We do so because the "choice" is that of the bankruptcy court and not that of the trial court. Thus, for this reason the trial court erred in reaffirming the sanctions and default judgments imposed and entered against the ADC parties on May 16, 1988.

For the above reasons, we have sustained appellants' first, fourth, fifth and sixth points of error as to the ADC parties. In addition, we have sustained appellants' second point of error as to Moritz, but we overrule appellants' second point of error as to ADC and Van de Wall. The points of error we sustain are dispositive of this

appeal and require a reversal and remand as to each appellant—Moritz, ADC, and Van de Wall. In light of our disposition of this appeal, we need not address appellants' remaining points of error. Tex.R. App.P. 81(b). Moreover, we point out that this appeal involves procedural matters arising from the two bankruptcy proceedings. Consequently, nothing in this opinion is to be read as dispositive of any of the merits of the underlying controversy between the parties.

Furthermore, one day prior to the issuance of this opinion, the Court received notice, by letter filed January 17, 1990, that a second petition for bankruptcy has been filed in federal bankruptcy court concerning appellant A.J.L. Moritz, Jr. Pursuant to 11 U.S.C. § 362, further action in the original appeal of this matter, No. 05–89–00348–CV, as to A.J.L. Moritz, Jr. is automatically stayed.

On the Court's own motion, we have severed the appeals of ADC and Van de Wall from that of A.J.L. Moritz, Jr., leaving Moritz's appeal under the original cause No. 05–89–00348–CV, which for administrative purposes, we have abated at this time. We proceed to final disposition of the appeals of ADC and Van de Wall only in the present case, cause No. 05–90–00059–CV.

We reverse the trial court's judgment as to ADC and Van de Wall and we remand the cause to the trial court for a new trial [2] as to them.

---

**2.** We read the bankruptcy court's order modifying the stay in the ADC proceedings to mean that the Distributors may again seek the identical discovery stayed, but no further discovery.