**HOUSTON PIPELINE COMPANY LP, Appellant,**

v.

**BANK OF AMERICA, N.A., Appellee.**

**No. 01–03–01263–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 24, 2006.

Anne Pike, Eric J.R. Nichols, John S. Adcock, David M. Gunn, Beck, Redden & Secrest, L.L.P., Houston, for Appellant.

Mark Ryan Trachtenberg, Alene Ross Levy, Haynes & Boone, LLP, Houston, Karen Sue Precella, Haynes & Boone, LLP, Fort Worth, for Appellee.

Panel consists of Justices JENNINGS, ALCALA and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Houston Pipeline Company LP (Houston Pipeline), appeals from a declaratory judgment entered by the trial court declaring relative rights in natural gas between Houston Pipeline and appellee, Bank of America, N.A. (the Bank). In five issues, Houston Pipeline contends the following: (1) the declaratory judgment violated the automatic bankruptcy stay of the Enron Company's (Enron) and related entities' bankruptcies; (2) the declaratory judgment violated the declaratory judgments act by affecting interests of absent parties and by not resolving the controversy; (3) the declaratory judgment was not entered in support of a ripe and justiciable controversy; (4) unresolved questions of material fact precluded entry of summary judgment on three of the four declarations; and (5) the trial court erred by summarily rejecting Houston Pipeline's counterclaim.

We conclude that the trial court's entry of the declaratory judgment violated the automatic bankruptcy stay, thus rendering the judgment void. Accordingly, we vacate the trial court's judgment and dismiss the case.

## Background

Houston Pipeline operates the Bammel Gas Reservoir, injecting and removing gas to sell to consumers in southeast Texas. In 1997, Houston Pipeline, at the time a subsidiary of Enron, sold natural gas to the Bammel Gas Trust (Bammel Trust), a trust created by Enron and the Bank, for $232 million. The Bank, through a lender group, provided the loan proceeds for the purchase, for which a security agreement was executed. After the sale, Houston Pipeline had the right to use the natural gas in the Bammel Reservoir in exchange for an obligation to pay fees to the Bammel Trust, and the Bank had a security interest in that gas.

1. Cushion gas is the volume of gas required in a reservoir to provide pressure that allows other gas, known as working gas, to be withdrawn. Pledged gas is the gas covered by the Bank's security interest, defined in the security agreement as "up to 80,000,000 MMBtus of Storage Gas present in the Bammel Storage Facility" and including the storage gas at issue in this case.

2. The following is a complete list of the Transaction Documents:
 - Participation Agreement, December 30, 1997
 - Marketing Agreement, December 30, 1997
 - Performance Guaranty, December 30, 1997
 - Declaration of Trust, December 30, 1997
 - Security Agreement, December 30, 1997
 - Pressurization and Storage Gas Borrowing Agreement, December 30, 1997
 - Storage Gas Sale Agreement, December 30, 1997
 - Option Agreement, December 30, 1997
 - Master Transaction Agreement, May 30, 2001

In 2001, Enron sold Houston Pipeline to AEP Energy Services Gas Holding Company (AEP). To facilitate this second sale, the Bammel Trust released Houston Pipeline's liabilities and obligations resulting from the first sale, and leased the natural gas in the Bammel Reservoir to BAM Lease Co. (LeaseCo), another subsidiary of Enron, but Houston Pipeline still had the right to use the natural gas in the Bammel Reservoir.

A series of documents was created relating to these transactions (collectively, the "Transaction Documents"), which refer to the natural gas variously as "storage gas," "pledged gas," "cushion gas" and "working gas." [1] Unless otherwise noted, we refer to the natural gas in the Bammel Gas Reservoir as the "Storage Gas," which includes the pledged gas, cushion gas, and working gas. As a result of the sale of Houston Pipeline to AEP, the parties executed "amended and restated" documents. Several of these documents are at issue in this case.[2]

- Storage Gas Sale Agreement, May 30, 2001
- Amended and Restated Option Agreement, May 30, 2001
- Amended and Restated Participation Agreement, May 31, 2001
- Amended and Restated Security Agreement, May 31, 2001
- Amended and Restated Performance Guaranty, May 31, 2001
- Amended and Restated Pressurization and Storage Gas Borrowing Agreement, May 31, 2001
- Amended and Restated Marketing Agreement, May 31, 2001
- Right to Use Agreement, May 31, 2001
- Sublease Agreement, May 31, 2001
- Amended and Restated Declaration of Trust, May 31, 2001
- Purchase Option Agreement, May 31, 2001
- Assurances and Indemnity Agreement, May 31, 2001
- Notice of Participation Agreement Event of Default, December 3, 2001

In December 2001, after executing the amended and restated Transaction Documents, Enron, LeaseCo, and other Enron affiliates filed for bankruptcy. The Bank subsequently filed a declaratory judgment action, the subject of this appeal, in state trial court, contending that Houston Pipeline's right to use the Storage Gas was subject to the Bank's security interest in the Storage Gas. The trial court granted summary judgment for the Bank and entered the following declarations (the Declarations):

(a) [Houston Pipeline] is estopped to deny that the Trustee is the owner of the Storage Gas;

(b) [The Bank] as Administrative Agent holds a security interest that is, *as against [Houston Pipeline]*, a valid and first-priority security interest in the Storage Gas;

(c) As a result of Bankruptcy Events involving Enron Corp. and BAM Lease Company, Events of Default and Guaranty Defaults have occurred under the Participation Agreement, the Guaranty, and the Security Agreement (as amended and restated);

(d) Any rights of [Houston Pipeline] to use the Storage Gas under or based on the Right to Use Agreement, the Consent and Acknowledgment Agreement, the Master Transaction Agreement, or any other Transaction Document (as amended and restated) are subject to the Trustee's ownership rights in and to the Storage Gas and Bank of America as Administrative Agent's security interest in the Storage Gas.

The following Transaction Documents are relevant to this case: Pressurization and Storage Gas Borrowing Agreement, Right to Use Agreement, Cushion Gas Consent, Amended and Restated Security Agreement, and Amended and Restated Performance Guaranty.

### Pressurization Agreement

The Pressurization and Storage Gas Borrowing Agreement (Pressurization Agreement) granted Houston Pipeline the right to use the Storage Gas in exchange for payments of pressurization fees to Bammel Trust and gave the Bank a security interest in the Storage Gas. The Amended and Restated Pressurization Agreement (Amended Pressurization Agreement) reflected a lease of the Storage Gas by Bammel Trust to LeaseCo and released Houston Pipeline's obligations and liabilities to the Bammel Trust. LeaseCo assumed Houston Pipeline's obligation to pay pressurization fees and also became obligated to provide "Exchange Gas" to Bammel Trust in exchange for the Storage Gas. Houston Pipeline also purchased 25 Bcf [3] of the Storage Gas from Bammel Trust and sold 10.5 Bcf of the Storage Gas to LeaseCo. After this transaction, 55 Bcf of the Storage Gas was left in the Bammel Gas Reservoir. The ownership rights to this 55 Bcf of Storage Gas is at issue here.

### Right to Use Agreement

LeaseCo and Houston Pipeline executed a Right to Use Agreement that provides that "so long as no [Houston Pipeline] Default has occurred and is continuing ... LeaseCo will have sufficient rights in and to the [Storage Gas] to enable it to make, and that it will cause and allow [the Storage Gas] to be available to [Houston Pipeline] ... for [Houston Pipeline's] right to Quiet Enjoyment at all times during the Term." The term was for 30 years with an option to renew for another 20 years. The Bank consented to the Right to Use Agreement and incorporated the terms of

---

3. "Bcf" means billion cubic feet.

that agreement into the Cushion Gas Consent.

### Cushion Gas Consent

The Cushion Gas Consent contains an express consent by the Bank, Houston Pipeline, the Bammel Trust trustee, and LeaseCo to the terms and conditions of the Right to Use Agreement. The Cushion Gas Consent further provides that Houston Pipeline has the right to cure any "Event of Default" in the performance or payment of obligations set forth in the Transaction Documents. Upon an Event of Default that "could adversely affect Houston Pipeline's rights under or pursuant to the Right to Use Agreement," the Bank was required to send a written notice of the Event of Default to the Bammel Trust trustee, LeaseCo, and Enron, among others, to trigger Houston Pipeline's right to cure. Any "Guaranty Default" defined in the Performance Guaranty is labeled in the Cushion Gas Consent as an Event of Default.

### Security Agreement

In the Amended and Restated Security Agreement (Security Agreement), the Bank agreed that its security interest in the pledged gas, the Storage Gas covered by the Bank's security interest, would be "subordinate to [Houston Pipeline's] right to borrow and use such Natural Gas in accordance with the terms of the Pressurization Agreement" "until the [Bammel Trust] Trustee . . . exercises its rights under . . . the [Performance] Guaranty."

### Performance Guaranty

In the Amended and Restated Performance Guaranty (Guaranty), Enron guaranteed to the Bammel Trust trustee "the punctual performance or payment . . . when due, . . . of all obligations of LeaseCo [and others] now or hereafter existing under the [Transaction Documents] . . . and any and all expenses . . . incurred by the [Bammel Trust trustee] in enforcing any

rights under" the Guaranty. A Guaranty Default by Enron, defined in the Cushion Gas Consent as an Event of Default, includes, among other things, "Enron or any of its Principal Subsidiaries [becoming] the subject of a Bankruptcy Event." Upon an Event of Default, the Bammel Trust trustee "shall be entitled to exercise all rights and remedies available at law, in equity, by statute, by agreement or otherwise," but as set forth above, under the Security Agreement, the Bank's security interest is subordinate to Houston Pipeline's right to use the Storage Gas until the trustee exercises any of its rights and remedies.

### The Automatic Bankruptcy Stay

In its first issue, Houston Pipeline contends that the trial court's entry of summary judgment and the Declarations violated the automatic bankruptcy stay, thus rendering the judgment void. The Bank contends that the stay was not violated because only Enron had standing to assert the stay, the judgment did not affect the Enron bankruptcy estate, and the stay was subsequently lifted, rendering any violation of the stay complaint moot.

The filing of a bankruptcy petition operates as an automatic stay of the following acts, among others: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," or "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C.S. § 362(a)(3), (4) (LexisNexis 1995). The Bankruptcy Code defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C.S. § 541(a)(1) (LexisNexis 1995); *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983).

The automatic stay encompasses a "wide swath of legal actions, including litigation, lien enforcement, and administrative proceedings, that *could* affect or interfere with the property of the bankrupt's estate." *Checkers Drive–In Rests., Inc. v. Comm'r of Patents & Trademarks,* 51 F.3d 1078, 1080 (D.C.Cir.1995) (emphasis added). The automatic stay offers important protection for debtors and creditors alike. *Id.* at 1081–82.

> Without [the automatic stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*Id.* at 1082 (quoting S.Rep. No. 989 at 49, 95th Cong., 2d Sess. 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, H.R.Rep. No. 595, 95th Cong., 2d Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297); *see also Mann v. Chase Manhattan Mortgage Corp.,* 316 F.3d 1, 3 (1st Cir.2003) (stating, "automatic stay ... serves the salutary purpose of deterring creditors from jockeying for advantage" and is thus "designed to forfend against the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings"). "To effectuate these congressional purposes, section 362(a) generally must be construed broadly" but "no more expansively than ... necessary to effectuate [its] legislative purpose." *Checkers Drive–In Rests.,* 51

F.3d at 1082. Specifically, "[t]he stay [must insure] that the debtor's affairs will be centralized, initially, in a *single forum* in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 998 (4th Cir.1986) (quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir.1976)) (emphasis added).

The automatic stay generally does not extend to protect nondebtor parties.[4] *Darr v. Altman,* 20 S.W.3d 802, 807 (Tex.App.-Houston [14th Dist.] 2000, no pet.). An exception applies, however, "when the claims against the debtor and nondebtor parties are 'inextricably intertwined.'" *Id.* (citing *Carway v. Progressive County Mut. Ins. Co.,* 183 B.R. 769, 775 (S.D.Tex.1995); *Federal Life Ins. Co. (Mut.) v. First Fin. Group of Tex., Inc.,* 3 B.R. 375, 376–77 (S.D.Tex.1980)). The automatic stay applies to nondebtors when "the allegations against [the debtors and nondebtors] arise from the same factual and legal basis." *Federal Life Ins.,* 3 B.R. at 377.

## A. Property of the Estate

Before determining whether the trial court's judgment violated the automatic stay, we must first determine whether the Storage Gas is property of the Enron bankruptcy estate and thereby whether the Declarations affect or interfere with property of the Enron bankruptcy estate. Houston Pipeline contends that the Storage Gas is property of the bankruptcy estate that was protected by the automatic

---

4. This general rule is consistent with the Bank's contention that "parties not part of the bankruptcy proceeding cannot use stay violations to their advantage." *Hanzel v. Herring,* 80 S.W.3d 167, 170 (Tex.App.-Fort Worth 2002, no pet.). Although nondebtors may not rely on the stay specifically for their own protection, the stay applies to certain proceedings against nonbankrupt parties when "the assets of the bankruptcy estate would be jeopardized." *Lisanti v. Dixon,* 147 S.W.3d 638, 642 (Tex.App.-Dallas 2004, pet. denied).

stay. Although the Bank contends that "this case does not involve property of the bankruptcy estate," it conceded during oral argument that LeaseCo has an interest in the Storage Gas.

As set forth above, property of the estate is defined broadly to include "all legal or equitable *interests* of the debtor in property" when the bankruptcy is filed. 11 U.S.C.S. § 541(a)(1) (emphasis added); *see Whiting Pools*, 462 U.S. at 204–05, 103 S.Ct. at 2312. This encompasses "all kinds of property including tangible or intangible property, causes of action, and all other forms of property currently specified in section 70a of the Bankruptcy Act." [5] *Whiting Pools*, 462 U.S. at 205 n. 9, 103 S.Ct. at 2313 n. 9. A debtor's possessory and ownership interests in property constitute property of the estate. *See BKS Props. v. Shumate*, 271 B.R. 794, 799 (N.D.Tex.2002) (holding that ownership interest in corporation or partnership constituted property of estate); *MCZ, Inc. v. Andrus Res., Inc. (In re MCZ, Inc.)*, 82 B.R. 40, 42 (Bankr. S.D.Tex.1987) (holding that debtor's possessory interest in funds on deposit constituted property of estate). Furthermore, it is well settled that a leasehold interest is property of the bankruptcy estate. *In re Lucre, Inc.*, 339 B.R. 648, 653 (Bankr. W.D.Mich.2006); *In re Drexel Burnham*

*Lambert Group, Inc.*, 138 B.R. 687, 702 (Bankr.S.D.N.Y.1992); *In re Alert Holdings, Inc.*, 148 B.R. 194, 203 (Bankr. S.D.N.Y.1992). Likewise, as a general rule, a debtor's interest as beneficiary of a trust is property of the estate.[6] *See In re Young*, 297 B.R. 492, 498 (Bankr.E.D.Tex. 2003) (citing *In re Shurley*, 115 F.3d 333 (5th Cir.1997) (holding that property contributed by debtor as beneficiary of family trust was property of estate)); *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 852 (E.D.Cal.2006) (holding that debtor's interest as beneficiary of living trust was property of estate).·

LeaseCo, a subsidiary of Enron, is one of the debtors in the Enron bankruptcy. As discussed above, it is undisputed by the parties that LeaseCo has an interest in the Storage Gas. Moreover, the record shows the following ownership and possessory interests in the Storage Gas belonging to LeaseCo:

- The Amended Pressurization Agreement reflects that LeaseCo was leasing the Storage Gas held in trust by Bammel Trust;[7]
- The Right to Use Agreement states that LeaseCo will have "sufficient rights" in the Storage Gas "to enable it to make and that it will cause and

---

**5.** Section 70a of the Bankruptcy Act *is* currently found at 11 U.S.C.S. § 541, formerly § 110(a)(6) of Title 11.

**6.** An exception to this rule exists for trusts protected by state law from creditors. 11 U.S.C.S. § 541(c)(2) (LexisNexis 1995); *see also In re Young*, 297 B.R. 492, 498 (Bankr. E.D.Tex.2003).

**7.** The Amended Pressurization Agreement contains two fees clauses, establishing LeaseCo's leasehold *interest in the Storage Gas:*

(b) LeaseCo agrees to pay to the Trustee, on or before the last LIBO Business Day of each month, through and including the Fi-

nal *Retirement Date, the Basic Pressurization Fee* determined on the date such payment is due, as a payment for the use by LeaseCo (or its designee) of cushion gas constituting 50% of the aggregate of the Storage Gas plus the Borrowed Gas pursuant to the terms hereof.

(c) LeaseCo agrees to pay to the Trustee, on or before the last LIBO Business Day of each month, through and including the Final Retirement Date, the Borrowing Rights Fee determined on the date such payment is due, as a payment for the right of Lease-Co (or its designee) to borrow cushion gas and working gas constituting 50% of the aggregate of the Storage Gas plus the Borrowed Gas pursuant to the terms hereof.

allow [the Storage Gas] to be available to [Houston Pipeline]"; and

- The Amended and Restated Declaration of Trust states that "[f]or purposes of federal, state and local income and franchise taxes and any other tax imposed on or measured by income ... the Trust Estate is an asset of LeaseCo." [8]

Because the record clearly shows that LeaseCo has possessory and ownership interests in the Storage Gas, we thus conclude that the Storage Gas is property of the LeaseCo bankruptcy estate, subject to the automatic stay. *See* 11 U.S.C.S. § 362(a)(3), (4).

**B. Stay Violations under Section 362(a)(3) and (4)**

 Section 362(a)(3) stays "any act to obtain possession of ... or to exercise control over *property of the estate.*" 11 U.S.C.S. § 362(a)(3) (emphasis added). The stay under subsection (a)(3) applies to "any action, *whether against the debtor or third-parties,* to obtain possession or to exercise control over property of the debtor." *A.H. Robins,* 788 F.2d at 1001 (emphasis in original); *see also Marroquin v. D & N Funding, Inc.,* 943 S.W.2d 112, 115 (Tex.App.-Corpus Christi 1997, no pet.) (holding stay was intact against nondebtor third party for action that sought to evict debtor and nondebtor from property of the estate); *Audio Data Corp. v. Monus,* 789 S.W.2d 281, 286 (Tex.App.-Dallas 1990, no writ) (holding that stay under 362(a)(3) is applicable to all entities of "any act to

obtain possession of ... or to exercise control over property of the estate") (quoting 11 U.S.C.S. § 362(a)(3)).

 Further, "[a] declaratory judgment action against a debtor is an 'act to ... exercise control over property of the estate', 11 U.S.C.S. § 362(a)(3), insofar as it seeks to affect ... estate property." *Harbison–Walker Refractories Co. v. Ace Prop. & Casualty Ins. Co. (In re Global Indus. Techs., Inc.),* 303 B.R. 753, 760 (Bankr.W.D.Penn.2004), *vacated in part & modified on other grounds,* 2004 WL 555418 (Feb. 3, 2004). Thus, "[a]ny action in which the judgment may diminish" an asset of the bankruptcy estate "is unquestionably subject to a stay under this subsection." *A.H. Robins,* 788 F.2d at 1001 (citing *In re Johns–Manville Corp.,* 33 B.R. 254, 261 (Bankr.S.D.N.Y.1983)). We apply section 362(a)(3) in light of the "Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly situated creditors." *Audio Data,* 789 S.W.2d 281 at 286.

 Section 362(a)(4) stays "any act to create, perfect, or *enforce* any lien against property of the estate." 11 U.S.C.S. § 362(a)(4) (emphasis added). A lien "is enforced by affirmative action such as filing lawsuits, foreclosing, and filing a notice of lis pendens." *Kocurek v. Arnold (In re Thurman),* 163 B.R. 95, 100 (Bankr. W.D.Tex.1994). These types of enforcement actions "would clearly be stayed by § 362(a)(4)." *Id.*

---

**8.** This clause in the Amended and Restated Declaration of Trust states the following, in its entirety:

*Tax Characterization.* For purposes of federal, state and local income and franchise taxes and any other tax imposed on or measured by income (and, as set forth in Section 10.01 of the Participation Agreement), it is intended, and the Trustee ac-

knowledges, that (a) the Trust is a security arrangement rather than a trust, (b) LeaseCo has placed the Trust Estate with the Trustee for the sole purpose of securing the payment of its obligations, (c) the Trustee is acting as an agent on behalf of LeaseCo, and (d) the Trust Estate is an asset of LeaseCo.

■ We analyze each Declaration under subsections 362(a)(3) and (4) to determine whether the Declarations as a whole violated the automatic stay. The trial court made the following three interrelated declarations, referenced above: "[Houston Pipeline] is estopped to deny that the Trustee is the owner of the Storage Gas"; "[The Bank] ... holds a security interest that is, *as against [Houston Pipeline]*, a valid and first-priority security interest in the Storage Gas"; and "Any rights of [Houston Pipeline] to use the Storage Gas ... are subject to the Trustee's ownership rights in and to the Storage Gas and [the Bank's] security interest in the Storage Gas." We conclude that these Declarations affect estate property as an act to control estate property because they influence the disposition of the Storage Gas by preventing Houston Pipeline from asserting an interest in the Storage Gas in bankruptcy court. *See A.H. Robins,* 788 F.2d at 1001; *Harbison–Walker,* 303 B.R. at 760. Thus, by excluding an interested third party, Houston Pipeline, we construe these Declarations as an act to exercise control over the Storage Gas.

We further conclude that these Declarations constitute an act to enforce the Bank's security interest because as part of the Bank's enforcement action against Enron, the Bank needed to determine whether its security interest was superior to Houston Pipeline's interest in the Storage Gas. *See Kocurek,* 163 B.R. at 100. Thus, a determination of what party holds a superior interest in the Storage Gas was a necessary prerequisite to the Bank entering a settlement agreement with Enron in bankruptcy court to enforce its security interest. We therefore conclude that these Declarations are an act to control estate property in violation of section 362(a)(3) of the bankruptcy stay and an act to enforce a lien in violation of section 362(a)(4) of the bankruptcy stay.

The trial court also declared, "As a result of Bankruptcy Events involving Enron Corp. and [LeaseCo], Events of Default and Guaranty Defaults have occurred under the Participation Agreement, the Guaranty, and the Security Agreement." By asserting that an "Event of Default" has occurred, this Declaration directly affects estate property because an Event of Default triggers the Bammel Trust trustee's right to enforce its rights and remedies under the Guaranty, including any "rights and remedies available at law, in equity, by statute, by agreement, or otherwise" against LeaseCo and in pursuit of the Storage Gas. Thus, we conclude that this Declaration affects estate property as an act to exercise control over the disposition of the Storage Gas and enforce rights and remedies against the debtor LeaseCo. *See A.H. Robins,* 788 F.2d at 1001; *Global Indus.,* 303 B.R. at 760.

Moreover, because the trial court's entry of the Declarations affects estate property, we further conclude that the declaratory judgment action itself was an act by the Bank to control property of the estate in violation of the automatic stay. *See Global Indus.,* 303 B.R. at 760, 764. The trial court's entry of judgment, therefore, violated the automatic bankruptcy stay. Furthermore, this declaratory judgment action would have been more properly handled by the bankruptcy court to insure that Enron's "affairs [would have been] centralized, initially, in a single forum in order to prevent conflicting judgments," *A.H. Robins,* 788 F.2d at 998, and because the "the allegations against [Enron and Houston Pipeline arose] from the same factual and legal basis." *Federal Life Ins.,* 3 B.R. at 377.

## C. Void Judgments and Standing to Complain about Violations of the Automatic Stay

■ The automatic stay "deprives state courts of jurisdiction over the debtor

and his property until the stay is lifted or modified." *Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 905 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (quoting *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 287 (Tex.App.-Houston [1st Dist.] 1991, writ denied)). Consequently, "[a]n action taken in violation of the automatic stay is void, not merely voidable." *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988); *see also Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex.1992) (order). A void judgment results when, as here, the trial court had no jurisdiction over the parties or subject matter. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex.1995). If the judgment is void because the trial court lacked jurisdiction, we vacate the trial court's judgment and dismiss the case. TEX.R.APP. P. 43.2(e); *see also Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278 (Tex.App.-El Paso 2005, no pet. h.) (holding that if trial court lacked jurisdiction, appellate court has jurisdiction only to set judgment aside and dismiss cause) (citing *Dallas County Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App.-Dallas 1994, writ denied)).

 The Bank contends that although an action in violation of the automatic stay is void rather than voidable, Houston Pipeline does not have standing to complain that the judgment is void because it is not a debtor. This standing requirement, however, has its nexus with voidable, not void, judgments. *See Philadelphia Life Ins. Co. v. Estate of Fuel Oil Supply Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 30 B.R. 360, 362 (N.D.Tex.1983).[9] Thus, the question of whether a nondebtor can challenge a voidable judgment is not jurisdictional. Because in Texas we recognize that a judgment entered in violation of the bankruptcy stay is void for lack of jurisdiction, this is a fundamental error that can be recognized by the appellate court, sua sponte, or raised for the first time on appeal by a party. *See Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Baytown State Bank*, 904 S.W.2d at 905. Therefore, we must address the issue of whether the automatic stay was violated to determine whether we have authority to hear this appeal. *See Waite v. Waite*, 150 S.W.3d 797, 800 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

 The Bank cites several Texas cases for the proposition that "parties not part of the bankruptcy proceeding cannot use stay violations to their advantage" to support its position that Houston Pipeline

9. The United States Supreme Court and the Texas Supreme Court have both held that judicial actions taken against a debtor in violation of a bankruptcy stay are absolutely void, whereas the Fifth Circuit has held that stay violations are voidable only at the debtor's or the bankruptcy trustee's insistence, not at a nondebtor's request. *Chunn v. Chunn*, 929 S.W.2d 490, 493 (Tex.App.-Houston [1st Dist.] 1996, no pet.). The Fifth Circuit reasoned that because the 1978 addition of section 362(d), added after the United States Supreme Court decision, gives the bankruptcy court the power to annul the automatic stay, judicial actions taken in violation of the stay were henceforth voidable. *Id.* (citing *Kalb v.*

*Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940) & *Sikes v. Global Marine*, 881 F.2d 176, 178–79 (5th Cir.1989)). Although we find the Fifth Circuit's approach well-reasoned, "we are 'obligated to follow ... the [Texas Supreme Court] and the United States Supreme Court.'" *Id.* (quoting *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993)). "Thus, we are bound by the Texas Supreme Court's decision in *Continental Casing Corp.* and consider the question now before us in light of the fact that judicial actions stayed by section 362 are void, not voidable." *Id.* (citing *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988)).

does not have standing to complain about a violation of the stay. *Lisanti v. Dixon,* 147 S.W.3d 638, 642 (Tex.App.-Dallas 2004, pet. denied); *Hanzel v. Herring,* 80 S.W.3d 167, 170 (Tex.App.-Fort Worth 2002, no pet.); *Bamburg v. Townsend,* 35 S.W.3d 85, 90 (Tex.App.-Texarkana 2000, no pet.). The appellate courts in these cases, however, did not find a violation of the stay and thus did not reach the issue of the appellate court's jurisdiction to hear the appeal. *See Lisanti,* 147 S.W.3d 638; *Hanzel,* 80 S.W.3d 167; *Bamburg v. Townsend,* 35 S.W.3d 85.

Furthermore, we find *United States v. Miller* instructive on the standing issue. No. Civ. A. 5:02–CV–0168–C, 2003 WL 23109906, at *6–7 (N.D.Tex. Dec. 22, 2003). To determine whether a party has standing to assert a violation of the stay, we must determine whether Congress designated that party as a beneficiary of the stay. *Id.* at *6. "Creditors 'are clearly parties in interest under the meaning of the Bankruptcy Code [when] they have a pecuniary interest that was adversely affected' by a postpetition transfer of property." *Id.* at *7 (quoting *Jeffries v. Browning (In re Reserves Dev. Corp.),* 78 B.R. 951, 957 (W.D.Mo.1986)). The court further stated the following:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against debtor's property. Those who acted first would obtain payment of their claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. In short, the automatic stay provides fair and equal protection to creditors' interests in order to realize the goals of the Bankruptcy Code.

*Id.* (citation omitted); *see Homer Nat'l Bank v. Namie,* 96 B.R. 652, 655 (W.D.La. 1989) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment."); *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir.1986) (purpose of stay to prevent a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); *Elbar Invs., Inc. v. Pierce (In re Pierce),* 272 B.R. 198, 203–204 (Bankr.S.D.Tex.2001) ("The stay is intended to benefit both debtors and creditors by assuring an equitable distribution of the debtor's assets and by preventing a race to the courthouse." (citing *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 716 (5th Cir.1985))). Finally, the court in *Miller* stated that

> [d]enying a ... creditor standing ... would have at least two unfortunate consequences. First, it would suggest that ... a creditor could proceed against the property [of the estate] in violation of the stay with impunity because the one party that has an incentive to complain of the violation ([another] creditor whose interest in the property has been harmed) is without standing to call the violation to the court's attention. Second, it creates a facially anomalous result in that, even though a violation of the automatic stay has occurred, and even though the actions taken in the violation stay [sic] are void *ab initio,* a creditor who is adversely affected by that action nevertheless is without standing to seek redress in the very forum established to enforce the statute that created the automatic stay.

2003 WL 23109906, at *9 (quoting *Barnett Bank of Se. Ga. v. Trust Co. Bank of Se. Ga. (In re Ring),* 178 B.R. 570, 578 (Bankr.S.D.Ga.1995)).

Although the Bank asserts that Houston Pipeline did not contend that it was a creditor at the trial court level and has thus waived this contention on appeal, we conclude that Houston Pipeline's status as a creditor of LeaseCo is clearly ascertainable from the Transaction Documents and thus did not need to be separately asserted by Houston Pipeline to assert a violation of the bankruptcy stay. Specifically, the Right to Use Agreement sets forth LeaseCo's obligation to provide the Storage Gas to Houston Pipeline for the term of the lease. Thus, we conclude that Houston Pipeline, as a creditor of Lease-Co, has standing to complain about the violation of the stay.

The Bank also contends that Houston Pipeline's argument that the Declarations were entered in violation of the stay is moot because the stay was subsequently lifted. This contention, however, does not affect our analysis because, as set forth above, the trial court entered the judgment when it did not have jurisdiction; thus, this Court has no jurisdiction to hear the appeal. *See Waite,* 150 S.W.3d at 800. We therefore do not address whether abatement at the trial court level was proper until the bankruptcy court lifted the automatic stay. Further, contrary to the Bank's contention that the "remedy here would be to remand to the trial court with instruction to reenter the judgment now that the stay has been lifted," *Howell v. Thompson,* 839 S.W.2d 92, 92 (Tex.1992) (order), this remedy is appropriate only when the stay has been annulled. *See Audio Data,* 789 S.W.2d at 285. The bankruptcy court is authorized to grant retroactive relief of the stay only by annulment pursuant to section 362(d) of the Bankruptcy Code. *Audio Data,* 789 S.W.2d at 285; *see also Bustamante v. Cueva (In re Cueva),* 371 F.3d 232, 236 (5th Cir. 2004). The record does not show that the Bank requested retroactive relief from the stay, nor does the order granting relief indicate that the bankruptcy court annulled the stay under section 362(d). *See Audio Data,* 789 S.W.2d at 285.[10] Thus, the order granting relief terminates the stay only from its date of entry on January 15, 2004. *See id.* at 286.

## Conclusion

We vacate the judgment of the trial court and dismiss the case. *See* Tex. R.App. P. 43.2(e).

---

10. Specifically, the order lifting the stay is contained within the order approving the settlement between the Bank and Enron. It states the following:

 [T]he automatic stay is hereby lifted for the sole purpose of allowing the Secured Party and the Trustee to attempt to realize upon the value of the Bammel Trust Gas, including allowing the Secured Party and/or the Trustee to cause the issuance of a Settlement Notice and a written Notice of an Event of Default (as such term is defined in the Operative Documents).