Joseph LISANTI, Jr., Appellant,

v.

Sherry DIXON, Appellee.

No. 05–03–01252–CV.

Court of Appeals of Texas, Dallas.

Sept. 9, 2004.

Rehearing Overruled Oct. 26, 2004.

Jill K. Bramlett, Arthur V. Lambert, Epstein, Becker, Green, Wickliff & Hall, P.C., Dallas, for Appellant.

John E. Schulman, Law Office of John E. Schulman, Kirk L. Pittard, Thurman & Andres, P.C., Mary Alice McLarty, McLarty, Roper, Pope, L.L.P., Dallas, for Appellee.

Before Justices MORRIS and WHITTINGTON.[1]

1. The Honorable Tom James, Retired, Court of Appeals, Fifth District of Texas at Dallas, was a member of the panel at the time this case was argued and submitted for decision. Due to his retirement from the Court, Justice

## OPINION

Opinion by Justice MORRIS.

Following a trial to the court without a jury, Joseph Lisanti appeals the trial court's judgment holding him liable for terminating the employment of Sherry Dixon because of her refusal to perform an illegal act. Lisanti brings four points of error arguing first that the judgment violates the automatic stay imposed as a result of the bankruptcy proceedings against Lisanti's codefendants Lisanti Foods and Lisanti Foods of Texas, Inc. Next, Lisanti argues the evidence is legally and factually insufficient to show either that Dixon was terminated for refusing to perform an illegal act or that Lisanti can be held individually liable for her termination as the alter ego of her corporate employer. Finally, Lisanti argues that Dixon was not legally or factually entitled to punitive damages. Concluding Lisanti's arguments are without merit, we affirm the trial court's judgment.

█ We first address the issue of the automatic stay. Sherry Dixon brought this suit in April 2001, naming Lisanti Foods, Lisanti Foods of Texas, Inc., New Jersey Trucking, Corp.("NJT") and Joseph Lisanti, Jr. as defendants. In November 2002, Lisanti Foods and Lisanti Foods of Texas, Inc. filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. The filing gave rise to an automatic stay in proceedings against those entities. *See* 11

U.S.C.A. § 362 (West 1993 & Supp.2004). The trial court in this case severed and abated Dixon's claims against Lisanti Foods and Lisanti Foods of Texas, Inc. and proceeded with the case against the remaining defendants, Lisanti and NJT. All four defendants objected to the severance. At no point, however, did the defendants urge the trial court or the bankruptcy court to extend the automatic stay to the proceedings against NJT and Lisanti.[2]

The case went to trial against NJT and Lisanti resulting in a verdict in favor of Dixon. The trial court found NJT and Lisanti jointly and severally liable for $100,000 in actual damages and each separately liable for $200,000 in exemplary damages. Lisanti now argues on appeal that the judgment violates the automatic stay imposed by virtue of the bankruptcy filings of Lisanti Foods and Lisanti Foods of Texas, Inc.

█ Under section 362(a) of chapter 11 of the United States Bankruptcy Code, the commencement or continuation of any judicial, administrative, or other proceeding against a debtor is automatically stayed. *See* 11 U.S.C.A. § 362(a). The general rule is that the automatic stay does not extend to parties other than the debtor. *See Bamburg v. Townsend,* 35 S.W.3d 85, 89 (Tex.App.-Texarkana 2000, no pet.). Exceptions to this rule exist under certain circumstances where the assets of the bankruptcy estate would be jeopardized. *Id.* Under those circum-

James did not participate in the issuance of this opinion. *See* Tex.R.App. P. 41.1(a) & (b).

2. Lisanti contends he and the other defendants alerted the trial court to the need to stay the proceedings against the nonbankrupt defendants in both the Suggestion of Bankruptcy and in their objection to severance of the case. In our examination of those documents, we found no statements, arguments, or evidence that would either support an exten-

sion of the stay to the nonbankrupt parties or inform the trial court that such an extension was being sought. At best, the defendants' objection to severance of the case obliquely refers to the fact that the claims against Lisanti and the bankrupt parties may be connected. This alone is insufficient to conclude that the issue of extending the stay to the nonbankrupt parties was presented to the trial court.

stances, the stay may be extended to proceedings against nonbankrupt parties. *Id.* The stay, however, is for the benefit of the debtor, and nonbankrupt parties cannot use the stay to their advantage. *See Hadsell v. Phila. Life Ins. Co. v. Estate of Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.),* 30 B.R. 360, 362 (Bankr.S.D.Tex.1983). Nonbankrupt parties have no substantive or procedural rights in the stay, other than to request their own relief from it. *See Bryce v. Stivers (In re Stivers),* 31 B.R. 735, 737 (Bankr.N.D.Cal.1983). If the debtor does not challenge a proceeding on the basis that it violates the automatic stay, then the other parties to the proceeding cannot use the stay for their own protection. *See Bamburg,* 35 S.W.3d at 90; *see also, Hanzel v. Herring,* 80 S.W.3d 167, 170 (Tex.App.-Fort Worth 2002, no pet.).

In the trial court, neither Lisanti Foods nor Lisanti Foods of Texas, Inc. urged the proceedings against Lisanti and NJT violated the automatic stay. Accordingly, neither Lisanti nor NJT can now claim the protections of the stay. We overrule Lisanti's first point of error.

Lisanti next challenges the legal and factual sufficiency of the evidence supporting Dixon's claims arising out of her alleged termination. Specifically, Lisanti argues Dixon failed to prove (1) he asked her to perform an illegal act, (2) she was terminated for refusing to perform an illegal act, and (3) her refusal to perform an illegal act was the sole reason for her termination. The trial court found that Dixon was discharged from her employment for the sole reason that she refused to perform illegal acts, including insurance, mail, and wire fraud in connection with reporting damaged trucks owned by NJT. In a trial to the court, findings of fact are reviewable for factual and legal sufficiency by the same standards as are applied in reviewing the factual and legal sufficiency of evidence supporting a jury's answers to jury questions. *Bolle, Inc. v. American Greetings Corp.,* 109 S.W.3d 827, 831 (Tex. App.-Dallas 2003, pet. denied). When reviewing a legal sufficiency issue, we consider only the evidence and inferences that tend to support the challenged findings and disregard all evidence and inferences to the contrary. *Selectouch Corp. v. Perfect Starch, Inc.,* 111 S.W.3d 830, 834 (Tex. App.-Dallas 2003, no pet.). If there is more than a scintilla of evidence to support the findings, the legal sufficiency challenge cannot be sustained. *Id.* In reviewing a claim of factual insufficiency, we must consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *Bolle,* 109 S.W.3d at 831. In addition, the trial court, as fact finder, is the sole judge of the credibility of the witnesses and she may accept or reject all or any part of a witness's testimony. *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

Here, Dixon's claim arises under an "exception" to the employment-at-will doctrine recognized by the Texas Supreme Court in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985). In *Sabine Pilot,* the supreme court held that a plaintiff has a cause of action on which she may recover if she is discharged for the sole reason that she refused to perform an illegal act. *See id.* at 735. It is the plaintiff's burden, however, to show by a preponderance of the evidence that her discharge was for no reason other than her refusal to perform an illegal act. *See id.*

At trial, Dixon and other witnesses testified that Lisanti ordered Dixon to change the vehicle identification numbers on two insurance claims to reflect that trucks registered in Arizona had sustained damage rather than trucks registered in Texas. The reason for the change, according to the witnesses, was that the Arizona trucks were fully insured while the Texas trucks were "self-insured." Several witnesses testified that Lisanti was clear that he wanted the claims changed to falsely reflect that Arizona trucks had been damaged so that he could collect payment from the insurance company. Dixon refused to make the changes and the insurance claim files were given to another employee. A person commits the criminal offense of insurance fraud if, "with the intent to defraud or deceive an insurer, the person causes to be prepared or presents to an insurer in support of a claim for payment under a health or property and casualty insurance policy a statement that the person knows contains false or misleading information concerning a matter that is material to the claim, and the matter affects a person's right to a payment or the amount of payment to which a person is entitled." TEX. PEN.CODE ANN. § 35.02 (Vernon Supp.2004–05).

■ Lisanti argues there is no evidence that the vehicle identification numbers were material to the insurance claims and, therefore, Dixon failed to prove she was requested to perform an illegal act. According to Lisanti, the Texas trucks that were damaged were fully insured, so there was either no reason for him to request that Dixon change the identification numbers or the changed numbers made no material difference to the insurance claims. Lisanti's only evidence that the Texas trucks were insured was his own testimony about the insurance and two insurance payment checks made out to two different Lisanti companies listing the vehicle identification number for one of the Texas trucks. This evidence alone does not show that the identification numbers were immaterial. Lisanti presented no evidence showing what insurance coverage applied to the Texas trucks or whether it was equivalent to the insurance covering the Arizona trucks. There was also no evidence that the trucks registered in Texas were similar to the trucks registered in Arizona.

Lisanti points to the fact that both Dixon and a fellow worker testified they attempted to alert the insurance company about the potentially false vehicle identification numbers on one of the claims and the insurance company paid the claim anyway. In the absence of any information about what the insurance company did with the information it received from Dixon and her coworker or how that information impacted the claim, this evidence is, at best, inconclusive. In short, Lisanti's evidence does not show that the misidentification of the insured property on the insurance claims was a matter that was immaterial to the claims.

■ Lisanti also challenges the sufficiency of the evidence showing that Dixon was fired solely because she refused to put false information in the insurance claims. Lisanti argues both that Dixon was never fired and, alternatively, if she was fired, that it was for reasons other than her refusal to perform an illegal act.

Dixon testified at trial that after she refused to falsify the insurance claims, Lisanti immediately treated her in a hostile manner and began giving her extra work duties. One employee told her she could not refuse to do what Lisanti wanted and keep her job. One day, after confronting one of her supervisors about the work situation, Dixon was told to go home early. When Dixon returned to the office the next day, a coworker asked her what she

was doing there. Dixon further testified that another coworker informed her he had been fired "too." According to Dixon, when she finally spoke with Lisanti, he told her she was not allowed on the property and she could pick up her last check during regular business hours. Lisanti also told Dixon that when she returned for her check, she should wait in the lobby. When Dixon attempted to collect her check, she was told it would not be released to her unless she signed a letter stating she had resigned. When Dixon refused to sign the letter, her check was withheld.

Lisanti disputes Dixon's testimony about her termination of employment and challenges her credibility as a witness. As stated above, however, the trial court, as fact finder, is the sole judge of the witnesses' credibility. *See Lyles,* 825 S.W.2d at 493. The trial court was free to accept Dixon's testimony about the facts of her termination and reject Lisanti's testimony that she voluntarily ended her employment. Lisanti also argues that "an abundance of evidence exists sufficient to support legitimate reasons for the termination of Dixon's employment. . . ." Lisanti points to testimony that Dixon had performance problems, including "frequent absences and repeated mistakes performing payroll functions." There is no testimony in the record, however, that Dixon was fired for these reasons. Indeed, all of the defense witnesses consistently testified that Dixon left her employment voluntarily. After reviewing the record as a whole, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Dixon was discharged from her employment solely because she refused to perform an illegal act. We overrule Lisanti's second point of error.

Lisanti next argues the trial court erred in concluding he was NJT's

alter ego and in holding him personally liable to Dixon. Lisanti contends the evidence is legally and factually insufficient to prove Dixon's alter ego theory of liability. The alter ego theory of liability applies when there is such unity between the corporation and the individual that the separateness of the corporation has ceased and holding only the corporation liable would be unjust. *See Goldstein v. Mortenson,* 113 S.W.3d 769, 781 (Tex.App.-Austin 2003, no pet.). Such unity can be shown where an individual owns or controls the corporate entity and operates the company in a manner indistinguishable from his personal affairs and in a manner calculated to mislead those dealing with him to their detriment. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 229 (Tex.1990). An alter ego relationship may be shown from the total dealings of the corporation and the individual, including evidence of "the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *See id.* at 228.

The record shows that Lisanti owned and controlled NJT and exclusively made all the decisions regarding NJT's business. Numerous witnesses testified that Lisanti micromanaged the company according to his own personal wishes. Furthermore, witnesses testified that NJT lacked adequate capitalization and even Lisanti conceded the company was not profitable. The business of NJT was constantly intermingled with the business of Lisanti's other companies. This evidence supports the trial court's finding that there was a unity between NJT and Lisanti such that NJT was no longer a separate entity and holding only the corporation liable would be

unjust. There is no evidence that shows this finding to be clearly wrong. Accordingly, we conclude the evidence is both legally and factually sufficient to support the trial court's imposition of liability on Lisanti under an alter ego theory.[3] We overrule Lisanti's third point of error.

 Finally, Lisanti argues the trial court erred in awarding Dixon punitive damages because her claims sounded in contract, rather than tort, and she failed to prove malice. It has long been held that exemplary damages are not allowed for breach of contract. *See Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). Even if the breach is malicious, intentional, or capricious, exemplary damages may not be awarded unless the plaintiff alleges and proves a distinct tort. *Id.*

Lisanti's argument focuses on his contention that Dixon's *Sabine Pilot* claim is contractual in nature rather than a tort. Lisanti fails to address, however, the fact that Dixon's petition included a claim for assault. In its findings of fact, the trial court specifically found that Lisanti physically and verbally threatened Dixon. Such threats fall within the definition of the tort of assault. *See* RESTATEMENT (SECOND) OF TORTS § 21 (1965). Lisanti does not challenge the sufficiency of the evidence supporting the trial court's findings on assault. Therefore, the trial court's award of punitive damages is supported by a finding of a distinct tort.

Lisanti's arguments regarding the trial court's malice finding similarly focus on Dixon's *Sabine Pilot* claim. In challenging the sufficiency of the evidence, he discusses the elements of malice applicable to retaliatory termination cases. Lisanti fails

to address the trial court's finding of malice as it relates to Dixon's assault claim. Because Lisanti failed to address all possible bases supporting the trial court's award of punitive damages, we overrule Lisanti's fourth point of error.

We affirm the trial court's judgment.

---

3. Because we conclude the trial court's alter ego finding is supported by legally and factually sufficient evidence, it is unnecessary for us to address the trial court's finding that NJT was a sham corporation created to perpetrate a fraud.