Opinion issued August 24, 2006








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-03-01263-CV






HOUSTON PIPELINE COMPANY LP, Appellant


V.


BANK OF AMERICA, N.A., Appellee






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2002-36488






O P I N I O N

 Appellant, Houston Pipeline Company LP (Houston Pipeline), appeals from a
declaratory judgment entered by the trial court declaring relative rights in natural gas
between Houston Pipeline and appellee, Bank of America, N.A. (the Bank). In five
issues, Houston Pipeline contends the following: (1) the declaratory judgment
violated the automatic bankruptcy stay of the Enron Company's (Enron) and related
entities' bankruptcies; (2) the declaratory judgment violated the declaratory
judgments act by affecting interests of absent parties and by not resolving the
controversy; (3) the declaratory judgment was not entered in support of a ripe and
justiciable controversy; (4) unresolved questions of material fact precluded entry of
summary judgment on three of the four declarations; and (5) the trial court erred by
summarily rejecting Houston Pipeline's counterclaim. We conclude that the trial
court's entry of the declaratory judgment violated the automatic bankruptcy stay, thus
rendering the judgment void. Accordingly, we vacate the trial court's judgment and
dismiss the case.

Background


 Houston Pipeline operates the Bammel Gas Reservoir, injecting and removing
gas to sell to consumers in southeast Texas. In 1997, Houston Pipeline, at the time
a subsidiary of Enron, sold natural gas to the Bammel Gas Trust (Bammel Trust), a
trust created by Enron and the Bank, for $232 million. The Bank, through a lender
group, provided the loan proceeds for the purchase, for which a security agreement
was executed. After the sale, Houston Pipeline had the right to use the natural gas in
the Bammel Reservoir in exchange for an obligation to pay fees to the Bammel Trust,
and the Bank had a security interest in that gas.

 In 2001, Enron sold Houston Pipeline to AEP Energy Services Gas Holding
Company (AEP). To facilitate this second sale, the Bammel Trust released Houston
Pipeline's liabilities and obligations resulting from the first sale, and leased the
natural gas in the Bammel Reservoir to BAM Lease Co. (LeaseCo), another
subsidiary of Enron, but Houston Pipeline still had the right to use the natural gas in
the Bammel Reservoir. 

 A series of documents was created relating to these transactions (collectively,
the "Transaction Documents"), which refer to the natural gas variously as "storage
gas," "pledged gas," "cushion gas" and "working gas." (1) Unless otherwise noted, we
refer to the natural gas in the Bammel Gas Reservoir as the "Storage Gas," which
includes the pledged gas, cushion gas, and working gas. As a result of the sale of
Houston Pipeline to AEP, the parties executed "amended and restated" documents. 
Several of these documents are at issue in this case. (2) 

 In December 2001, after executing the amended and restated Transaction
Documents, Enron, LeaseCo, and other Enron affiliates filed for bankruptcy. The
Bank subsequently filed a declaratory judgment action, the subject of this appeal, in
state trial court, contending that Houston Pipeline's right to use the Storage Gas was
subject to the Bank's security interest in the Storage Gas. The trial court granted
summary judgment for the Bank and entered the following declarations (the
Declarations):

 (a) [Houston Pipeline] is estopped to deny that the Trustee is the
owner of the Storage Gas;


 (b) [The Bank] as Administrative Agent holds a security interest that
is, as against [Houston Pipeline], a valid and first-priority security
interest in the Storage Gas;


 (c) As a result of Bankruptcy Events involving Enron Corp. and
BAM Lease Company, Events of Default and Guaranty Defaults have
occurred under the Participation Agreement, the Guaranty, and the
Security Agreement (as amended and restated); 


 (d) Any rights of [Houston Pipeline] to use the Storage Gas under or
based on the Right to Use Agreement, the Consent and
Acknowledgment Agreement, the Master Transaction Agreement, or any
other Transaction Document (as amended and restated) are subject to the
Trustee's ownership rights in and to the Storage Gas and Bank of
America as Administrative Agent's security interest in the Storage Gas.


 The following Transaction Documents are relevant to this case: Pressurization
and Storage Gas Borrowing Agreement, Right to Use Agreement, Cushion Gas
Consent, Amended and Restated Security Agreement, and Amended and Restated
Performance Guaranty.

Pressurization Agreement

 The Pressurization and Storage Gas Borrowing Agreement (Pressurization
Agreement) granted Houston Pipeline the right to use the Storage Gas in exchange
for payments of pressurization fees to Bammel Trust and gave the Bank a security
interest in the Storage Gas. The Amended and Restated Pressurization Agreement
(Amended Pressurization Agreement) reflected a lease of the Storage Gas by Bammel
Trust to LeaseCo and released Houston Pipeline's obligations and liabilities to the
Bammel Trust. LeaseCo assumed Houston Pipeline's obligation to pay pressurization
fees and also became obligated to provide "Exchange Gas" to Bammel Trust in
exchange for the Storage Gas. Houston Pipeline also purchased 25 Bcf (3) of the
Storage Gas from Bammel Trust and sold 10.5 Bcf of the Storage Gas to LeaseCo. 
After this transaction, 55 Bcf of the Storage Gas was left in the Bammel Gas
Reservoir. The ownership rights to this 55 Bcf of Storage Gas is at issue here.

Right to Use Agreement

 LeaseCo and Houston Pipeline executed a Right to Use Agreement that
provides that "so long as no [Houston Pipeline] Default has occurred and is
continuing . . . LeaseCo will have sufficient rights in and to the [Storage Gas] to
enable it to make, and that it will cause and allow [the Storage Gas] to be available
to [Houston Pipeline] . . . for [Houston Pipeline's] right to Quiet Enjoyment at all
times during the Term." The term was for 30 years with an option to renew for
another 20 years. The Bank consented to the Right to Use Agreement and
incorporated the terms of that agreement into the Cushion Gas Consent. 

Cushion Gas Consent

 The Cushion Gas Consent contains an express consent by the Bank, Houston
Pipeline, the Bammel Trust trustee, and LeaseCo to the terms and conditions of the
Right to Use Agreement. The Cushion Gas Consent further provides that Houston
Pipeline has the right to cure any "Event of Default" in the performance or payment
of obligations set forth in the Transaction Documents. Upon an Event of Default that
"could adversely affect Houston Pipeline's rights under or pursuant to the Right to
Use Agreement," the Bank was required to send a written notice of the Event of
Default to the Bammel Trust trustee, LeaseCo, and Enron, among others, to trigger
Houston Pipeline's right to cure. Any "Guaranty Default" defined in the Performance
Guaranty is labeled in the Cushion Gas Consent as an Event of Default. 

Security Agreement

 In the Amended and Restated Security Agreement (Security Agreement), the
Bank agreed that its security interest in the pledged gas, the Storage Gas covered by
the Bank's security interest, would be "subordinate to [Houston Pipeline's] right to
borrow and use such Natural Gas in accordance with the terms of the Pressurization
Agreement" "until the [Bammel Trust] Trustee . . . exercises its rights under . . . the
[Performance] Guaranty."

Performance Guaranty

 In the Amended and Restated Performance Guaranty (Guaranty), Enron
guaranteed to the Bammel Trust trustee "the punctual performance or payment . . .
when due, . . . of all obligations of LeaseCo [and others] now or hereafter existing
under the [Transaction Documents] . . . and any and all expenses . . . incurred by the
[Bammel Trust trustee] in enforcing any rights under" the Guaranty. A Guaranty
Default by Enron, defined in the Cushion Gas Consent as an Event of Default,
includes, among other things, "Enron or any of its Principal Subsidiaries [becoming]
the subject of a Bankruptcy Event." Upon an Event of Default, the Bammel Trust
trustee "shall be entitled to exercise all rights and remedies available at law, in equity,
by statute, by agreement or otherwise," but as set forth above, under the Security
Agreement, the Bank's security interest is subordinate to Houston Pipeline's right to
use the Storage Gas until the trustee exercises any of its rights and remedies.

The Automatic Bankruptcy Stay


 In its first issue, Houston Pipeline contends that the trial court's entry of
summary judgment and the Declarations violated the automatic bankruptcy stay, thus
rendering the judgment void. The Bank contends that the stay was not violated
because only Enron had standing to assert the stay, the judgment did not affect the
Enron bankruptcy estate, and the stay was subsequently lifted, rendering any violation
of the stay complaint moot.

 The filing of a bankruptcy petition operates as an automatic stay of the
following acts, among others: "any act to obtain possession of property of the estate
or of property from the estate or to exercise control over property of the estate," or
"any act to create, perfect, or enforce any lien against property of the estate." 11
U.S.C.S. § 362(a)(3), (4) (LexisNexis 1995). The Bankruptcy Code defines property
of the estate broadly to include "all legal or equitable interests of the debtor in
property as of the commencement of the [bankruptcy] case." 11 U.S.C.S. § 541(a)(1)
(LexisNexis 1995); see United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05,
103 S. Ct. 2309, 2312 (1983). 

 The automatic stay encompasses a "wide swath of legal actions, including
litigation, lien enforcement, and administrative proceedings, that could affect or
interfere with the property of the bankrupt's estate." Checkers Drive-In Rests., Inc.
v. Comm'r of Patents & Trademarks, 51 F.3d 1078, 1080 (D.C. Cir. 1995) (emphasis
added). The automatic stay offers important protection for debtors and creditors
alike. Id. at 1081-82. 

 Without [the automatic stay], certain creditors would be able to pursue
their own remedies against the debtor's property. Those who acted first
would obtain payment of the claims in preference to and to the detriment
of other creditors. Bankruptcy is designed to provide an orderly
liquidation procedure under which all creditors are treated equally. A
race of diligence by creditors for the debtor's assets prevents that.

Id. at 1082 (quoting S. Rep. No. 989 at 49, 95th Cong., 2d Sess. 54 (1978), reprinted
in 1978 U.S.C.C.A.N. 5787, 5835, H.R. Rep. No. 595, 95th Cong., 2d Sess. 340
(1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297); see also Mann v. Chase
Manhattan Mortgage Corp., 316 F.3d 1, 3 (5th Cir. 2003) (stating, "automatic stay
. . . serves the salutory purpose of deterring creditors from jockeying for advantage"
and is thus "designed to forfend against the disorderly, piecemeal dismemberment of
the debtor's estate outside the bankruptcy proceedings"). "To effectuate these
congressional purposes, section 362(a) generally must be construed broadly" but "no
more expansively than . . . necessary to effectuate [its] legislative purpose." Checkers
Drive-In Rests., 51 F.3d at 1082. Specifically, "[t]he stay [must insure] that the
debtor's affairs will be centralized, initially, in a single forum in order to prevent
conflicting judgments from different courts and in order to harmonize all of the
creditors' interests with one another." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 998
(4th Cir. 1986) (quoting Fidelity Mortgage Investors v. Camelia Builders, Inc., 550
F.2d 47, 55 (2d Cir. 1976)) (emphasis added).

 The automatic stay generally does not extend to protect nondebtor parties. (4) 
Darr v. Altman, 20 S.W.3d 802, 807 (Tex. App.--Houston [14th Dist.] 2000, no pet.). 
An exception applies, however, "when the claims against the debtor and nondebtor
parties are 'inextricably intertwined.'" Id. (citing Carway v. Progressive County Mut.
Ins. Co., 183 B.R. 769, 775 (S.D. Tex. 1995); Federal Life Ins. Co. (Mut.) v. First
Fin. of Tex., Inc., 3 B.R. 375, 376-77 (S.D. Tex. 1980)). The automatic stay applies
to nondebtors when "the allegations against [the debtors and nondebtors] arise from
the same factual and legal basis." Federal Life Ins., 3 B.R. at 377. 

A. Property of the Estate

 Before determining whether the trial court's judgment violated the automatic
stay, we must first determine whether the Storage Gas is property of the Enron
bankruptcy estate and thereby whether the Declarations affect or interfere with
property of the Enron bankruptcy estate. Houston Pipeline contends that the Storage
Gas is property of the bankruptcy estate that was protected by the automatic stay. 
Although the Bank contends that "this case does not involve property of the
bankruptcy estate," it conceded during oral argument that LeaseCo has an interest in
the Storage Gas. 

 As set forth above, property of the estate is defined broadly to include "all legal
or equitable interests of the debtor in property" when the bankruptcy is filed. 11
U.S.C.S. § 541(a)(1) (emphasis added); see Whiting Pools, 462 U.S. at 204-05, 103
S. Ct. at 2312. This encompasses "all kinds of property including tangible or
intangible property, causes of action, and all other forms of property currently
specified in section 70a of the Bankruptcy Act." (5) Whiting Pools, 462 U.S. at 205 n.9,
103 S. Ct. at 2313 n.9. A debtor's possessory and ownership interests in property
constitute property of the estate. See BKS Props. v. Shumate, 271 B.R. 794, 799
(N.D. Tex. 2002) (holding that ownership interest in corporation or partnership
constituted property of estate); MCZ, Inc. v. Andrus Res., Inc. (In re MCZ , Inc.), 82
B.R. 40, 42 (Bankr. S.D. Tex. 1987) (holding that debtor's possessory interest in
funds on deposit constituted property of estate). Furthermore, it is well settled that
a leasehold interest is property of the bankruptcy estate. In re Lucre, Inc., 339 B.R.
648, 653 (Bankr. W.D. Mich. 2006); In re Drexel Burnham Lambert Group, Inc., 138
B.R. 687, 702 (Bankr. S.D.N.Y. 1992); In re Alert Holdings, Inc., 148 B.R. 194, 203
(Bankr. S.D.N.Y. 1992). Likewise, as a general rule, a debtor's interest as beneficiary
of a trust is property of the estate. (6) See In re Young, 297 B.R. 492, 498 (E.D. Tex.
2003) (citing In re Shurley, 115 F.3d 333 (5th Cir. 1997) (holding that property
contributed by debtor as beneficiary of family trust was property of estate)); Ohanian
v. Irwin (In re Irwin), 338 B.R. 839, 852 (E.D. Cal. 2006) (holding that debtor's
interest as beneficiary of living trust was property of estate).

 LeaseCo, a subsidiary of Enron, is one of the debtors in the Enron bankruptcy. 
As discussed above, it is undisputed by the parties that LeaseCo has an interest in the
Storage Gas. Moreover, the record shows the following ownership and possessory
interests in the Storage Gas belonging to LeaseCo:


 The Amended Pressurization Agreement reflects that LeaseCo was
leasing the Storage Gas held in trust by Bammel Trust; (7) 

 The Right to Use Agreement states that LeaseCo will have "sufficient
rights" in the Storage Gas "to enable it to make and that it will cause and
allow [the Storage Gas] to be available to [Houston Pipeline]"; and


 


 The Amended and Restated Declaration of Trust states that "[f]or
purposes of federal, state and local income and franchise taxes and any
other tax imposed on or measured by income . . . the Trust Estate is an
asset of LeaseCo." (8)



 Because the record clearly shows that LeaseCo has possessory and ownership
interests in the Storage Gas, we thus conclude that the Storage Gas is property of the
LeaseCo bankruptcy estate, subject to the automatic stay. See 11 U.S.C.S.
§ 362(a)(3), (4).


B. Stay Violations under Section 362(a)(3) and (4)

 Section 362(a)(3) stays "any act to obtain possession of . . . or to exercise
control over property of the estate." 11 U.S.C.S. § 362(a)(3) (emphasis added). The
stay under subsection (a)(3) applies to "any action, whether against the debtor or
third-parties, to obtain possession or to exercise control over property of the debtor." 
A.H. Robins, 788 F.2d at 1001 (emphasis in original); see also Marroquin v. D & N
Funding, Inc., 943 S.W.2d 112, 115 (Tex. App.--Corpus Christi 1997, no pet.)
(holding stay was intact against nondebtor third party for action that sought to evict
debtor and nondebtor from property of the estate); Audio Data Corp. v. Monus, 789
S.W.2d 281, 286 (Tex. App.--Dallas 1990, no writ) (holding that stay under
362(a)(3) is applicable to all entities of "any act to obtain possession of . . . or to
exercise control over property of the estate") (quoting 11 U.S.C.S. § 362(a)(3)).

 Further, "[a] declaratory judgment action against a debtor is an 'act to . . .
exercise control over property of the estate', 11 U.S.C.S. § 362(a)(3), insofar as it
seeks to affect . . . estate property." Harbison-Walker Refractories Co. v. Ace Prop.
& Casualty Ins. Co. (In re Global Indus. Techs., Inc.), 303 B.R. 753, 760 (Bankr.
W.D. Penn. 2004), vacated in part & modified on other grounds, 2004 WL 555418
(Feb. 3, 2004). Thus, "[a]ny action in which the judgment may diminish" an asset of
the bankruptcy estate "is unquestionably subject to a stay under this subsection." 
A.H. Robins, 788 F.2d at 1001 (citing In re Johns Manville Corp., 33 B.R. 254, 261
(Bankr. S.D.N.Y. 1983)). We apply section 362(a)(3) in light of the "Bankruptcy
Code's general policies of securing and preserving the debtor's property and of
ensuring equal distribution of the debtor's assets to similarly situated creditors." 
Audio Data, 789 S.W.2d 281 at 286.

 Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against
property of the estate." 11 U.S.C.S. § 362(a)(4) (emphasis added). A lien "is
enforced by affirmative action such as filing lawsuits, foreclosing, and filing a notice
of lis pendens." Kocurek v. Arnold (In re Thurman), 163 B.R. 95, 100 (Bankr. W.D.
Tex. 1994). These types of enforcement actions "would clearly be stayed by
§ 362(a)(4)." Id.

 We analyze each Declaration under subsections 362(a)(3) and (4) to determine
whether the Declarations as a whole violated the automatic stay. The trial court made
the following three interrelated declarations, referenced above: "[Houston Pipeline]
is estopped to deny that the Trustee is the owner of the Storage Gas"; "[The Bank]
. . . holds a security interest that is, as against [Houston Pipeline], a valid and first-priority security interest in the Storage Gas"; and "Any rights of [Houston Pipeline]
to use the Storage Gas . . . are subject to the Trustee's ownership rights in and to the
Storage Gas and [the Bank's] security interest in the Storage Gas." We conclude that
these Declarations affect estate property as an act to control estate property because
they influence the disposition of the Storage Gas by preventing Houston Pipeline
from asserting an interest in the Storage Gas in bankruptcy court. See A.H. Robins,
788 F.2d at 1001; Harbison-Walker, 303 B.R. at 760. Thus, by excluding an
interested third party, Houston Pipeline, we construe these Declarations as an act to
exercise control over the Storage Gas.

 We further conclude that these Declarations constitute an act to enforce the
Bank's security interest because as part of the Bank's enforcement action against
Enron, the Bank needed to determine whether its security interest was superior to
Houston Pipeline's interest in the Storage Gas. See Kocurek, 163 B.R. at 100. Thus,
a determination of what party holds a superior interest in the Storage Gas was a
necessary prerequisite to the Bank entering a settlement agreement with Enron in
bankruptcy court to enforce its security interest. We therefore conclude that these
Declarations are an act to control estate property in violation of section 362(a)(3) of
the bankruptcy stay and an act to enforce a lien in violation of section 362(a)(4) of
the bankruptcy stay.

 The trial court also declared, "As a result of Bankruptcy Events involving
Enron Corp. and [LeaseCo], Events of Default and Guaranty Defaults have occurred
under the Participation Agreement, the Guaranty, and the Security Agreement." By
asserting that an "Event of Default" has occurred, this Declaration directly affects
estate property because an Event of Default triggers the Bammel Trust trustee's right
to enforce its rights and remedies under the Guaranty, including any "rights and
remedies available at law, in equity, by statute, by agreement, or otherwise" against
LeaseCo and in pursuit of the Storage Gas. Thus, we conclude that this Declaration
affects estate property as an act to exercise control over the disposition of the Storage
Gas and enforce rights and remedies against the debtor LeaseCo. See A.H. Robins,
788 F.2d at 1001; Global Indus., 303 B.R. at 760.

 Moreover, because the trial court's entry of the Declarations affects estate
property, we further conclude that the declaratory judgment action itself was an act
by the Bank to control property of the estate in violation of the automatic stay. See
Global Indus., 303 B.R. at 760, 764. The trial court's entry of judgment, therefore,
violated the automatic bankruptcy stay. Furthermore, this declaratory judgment
action would have been more properly handled by the bankruptcy court to insure that
Enron's "affairs [would have been] centralized, initially, in a single forum in order
to prevent conflicting judgments," A.H. Robins, 788 F.2d at 998, and because the "the
allegations against [Enron and Houston Pipeline arose] from the same factual and
legal basis." Federal Life Ins., 3 B.R. at 377. 

C. Void Judgments and Standing to Complain about Violations of the
Automatic Stay


 The automatic stay "deprives state courts of jurisdiction over the debtor and his
property until the stay is lifted or modified." Baytown State Bank v. Nimmons, 904
S.W.2d 902, 905 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (quoting Owen
Elec. Supply, Inc. v. Brite Day Constr., Inc., 821 S.W.2d 283, 287 (Tex.
App.--Houston [1st Dist.] 1991, writ denied)). Consequently, "[a]n action taken in
violation of the automatic stay is void, not merely voidable." Continental Casing
Corp. v. Samedan Oil Corp., 751 S.W.2d 499, 501 (Tex. 1988); see also Howell v.
Thompson, 839 S.W.2d 92, 92 (Tex. 1992) (order). A void judgment results when,
as here, the trial court had no jurisdiction over the parties or subject matter. State ex
rel. Latty v. Owens, 907 S.W.2d 484, 485 (Tex. 1985). If the judgment is void
because the trial court lacked jurisdiction, we vacate the trial court's judgment and
dismiss the case. Tex. R. App. P. 43.2(e); see also Juarez v. Tex. Ass'n of Sporting
Officials El Paso Chapter, 172 S.W.3d 274, 278 (Tex. App.--El Paso 2005, no pet.
h.) (holding that if trial court lacked jurisdiction, appellate court has jurisdiction only
to set judgment aside and dismiss cause) (citing Dallas County Appraisal Dist. v.
Funds Recovery, Inc., 887 S.W.2d 465, 468 (Tex. App.--Dallas 1994, writ denied)).

 The Bank contends that although an action in violation of the automatic stay
is void rather than voidable, Houston Pipeline does not have standing to complain
that the judgment is void because it is not a debtor. This standing requirement,
however, has its nexus with voidable, not void, judgments. See Philadelphia Life Ins.
Co. v. Estate of Fuel Oil Supply Terminaling, Inc. (In re Fuel Oil Supply &
Terminaling, Inc.), 30 B.R. 360, 362 (N.D. Tex. 1983). (9) Thus, the question of
whether a nondebtor can challenge a voidable judgment is not jurisdictional. Because
in Texas we recognize that a judgment entered in violation of the bankruptcy stay is
void for lack of jurisdiction, this is a fundamental error that can be recognized by the
appellate court, sua sponte, or raised for the first time on appeal by a party. See Saudi
v. Brieven, 176 S.W.3d 108, 113 (Tex. App.--Houston [1st Dist.] 2004, no pet.); 
Baytown State Bank, 904 S.W.2d at 905. Therefore, we must address the issue of
whether the automatic stay was violated to determine whether we have authority to
hear this appeal. See Waite v. Waite, 150 S.W.3d 791, 800 (Tex. App.--Houston [1st
Dist.] 2004, pet. denied).

 The Bank cites several Texas cases for the proposition that "parties not part of
the bankruptcy proceeding cannot use stay violations to their advantage" to support
its position that Houston Pipeline does not have standing to complain about a
violation of the stay. Lisanti v. Dixon, 147 S.W.3d 638, 642 (Tex. App.--Dallas
2004, pet. denied); Hanzel v. Herring, 80 S.W.3d 167, 170 (Tex. App.--Fort Worth
2002, no pet.); Bamburg v. Townsend, 35 S.W.3d 85, 90 (Tex. App.--Texarkana
2000, no pet.). The appellate courts in these cases, however, did not find a violation
of the stay and thus did not reach the issue of the appellate court's jurisdiction to hear
the appeal. See Lisanti, 147 S.W.3d 638; Hanzel, 80 S.W.3d 167; Bamburg v.
Townsend, 35 S.W.3d 85. 

 Furthermore, we find United States v. Miller instructive on the standing issue. 
No. Civ. A. 5:02-CV-0168-C, 2003 WL 23109906, at *6-7 (N.D. Tex. Dec. 22,
2003). To determine whether a party has standing to assert a violation of the stay, we
must determine whether Congress designated that party as a beneficiary of the stay. 
Id. at *6. "Creditors 'are clearly parties in interest under the meaning of the
Bankruptcy Code [when] they have a pecuniary interest that was adversely affected'
by a postpetition transfer of property." Id. at *7 (quoting Jeffries v. Browning (In re
Reserves Dev. Corp.), 78B.R. 951, 957 (W.D. Mo. 1986)). The court further stated
the following:

 The automatic stay also provides creditor protection. Without it, certain
creditors would be able to pursue their own remedies against debtor's
property. Those who acted first would obtain payment of their claim in
preference to and to the detriment of other creditors. Bankruptcy is
designed to provide an orderly liquidation procedure under which all
creditors are treated equally. In short, the automatic stay provides fair
and equal protection to creditors' interests in order to realize the goals
of the Bankruptcy Code. 


Id. (citation omitted); see Homer Nat'l Bank v. Namie, 96 B.R. 652, 655 (W.D.
La.1989) ("The purpose of the automatic stay is to protect creditors in a manner
consistent with the bankruptcy goal of equal treatment."); Hunt v. Bankers Trust Co.,
799 F.2d 1060, 1069 (5th Cir.1986) (purpose of stay to prevent a "chaotic and
uncontrolled scramble for the debtor's assets in a variety of uncoordinated
proceedings in different courts"); Elbar Invs., Inc. v. Pierce (In re Pierce), 272 B.R.
198, 203-204 (Bankr. S.D. Tex. 2001) ("The stay is intended to benefit both debtors
and creditors by assuring an equitable distribution of the debtor's assets and by
preventing a race to the courthouse." (citing GATX Aaircraft Corp. v. M/V Courtney
Leigh, 768 F.2d 711, 716 (5th Cir. 1985))). Finally, the court in Miller stated that 

 [d]enying a . . . creditor standing . . . would have at least two unfortunate
consequences. First, it would suggest that . . . a creditor could proceed
against the property [of the estate] in violation of the stay with impunity
because the one party that has an incentive to complain of the violation
([another] creditor whose interest in the property has been harmed) is
without standing to call the violation to the court's attention. Second, it
creates a facially anomalous result in that, even though a violation of the
automatic stay has occurred, and even though the actions taken in the
violation stay [sic] are void ab initio, a creditor who is adversely
affected by that action nevertheless is without standing to seek redress
in the very forum established to enforce the statute that created the
automatic stay. 


2003 WL 23109906, at *9 (quoting Barnett Bank of Se. Ga. v. Trust Co. Bank of Se.
Ga. (In re Ring), 178 B.R. 570, 578 (Bankr. S.D. Ga 1995)).

 Although the Bank asserts that Houston Pipeline did not contend that it was a
creditor at the trial court level and has thus waived this contention on appeal, we
conclude that Houston Pipeline's status as a creditor of LeaseCo is clearly
ascertainable from the Transaction Documents and thus did not need to be separately
asserted by Houston Pipeline to assert a violation of the bankruptcy stay. 
Specifically, the Right to Use Agreement sets forth LeaseCo's obligation to provide
the Storage Gas to Houston Pipeline for the term of the lease. Thus, we conclude that
Houston Pipeline, as a creditor of LeaseCo, has standing to complain about the
violation of the stay.

 The Bank also contends that Houston Pipeline's argument that the Declarations
were entered in violation of the stay is moot because the stay was subsequently lifted. 
This contention, however, does not affect our analysis because, as set forth above, the
trial court entered the judgment when it did not have jurisdiction; thus, this Court has
no jurisdiction to hear the appeal. See Waite, 150 S.W.3d at 800. We therefore do
not address whether abatement at the trial court level was proper until the bankruptcy
court lifted the automatic stay. Further, contrary to the Bank's contention that the
"remedy here would be to remand to the trial court with instruction to reenter the
judgment now that the stay has been lifted," Howell v. Thompson, 839 S.W.2d 92, 92
(Tex. 1992) (order), this remedy is appropriate only when the stay has been annulled. 
See Audio Data, 789 S.W.2d at 285. The bankruptcy court is authorized to grant
retroactive relief of the stay only by annulment pursuant to section 362(d) of the
Bankruptcy Code. Audio Data, 789 S.W.2d at 285; see also Bustamante v. Cueva (In
re Cueva), 371 F.3d 232, 236 (5th Cir. 2004). The record does not show that the
Bank requested retroactive relief from the stay, nor does the order granting relief
indicate that the bankruptcy court annulled the stay under section 362(d). See Audio
Data, 789 S.W.2d at 285. (10) Thus, the order granting relief terminates the stay only
from its date of entry on January 15, 2004. See id. at 286.

Conclusion


 We vacate the judgment of the trial court and dismiss the case. See Tex. R.
App. P. 43.2(e).

 


 Elsa Alcala

 Justice

Panel consists of Justices Jennings, Alcala and Hanks.
1. Cushion gas is the volume of gas required in a reservoir to provide pressure that
allows other gas, known as working gas, to be withdrawn. Pledged gas is the gas
covered by the Bank's security interest, defined in the security agreement as "up to
80,000,000 MMBtus of Storage Gas present in the Bammel Storage Facility" and
including the storage gas at issue in this case.
2. The following is a complete list of the Transaction Documents:



 Participation Agreement, December 30, 1997
 Marketing Agreement, December 30, 1997
 Performance Guaranty, December 30, 1997
 Declaration of Trust, December 30, 1997
 Security Agreement, December 30, 1997
 Pressurization and Storage Gas Borrowing Agreement, December 30, 1997
 Storage Gas Sale Agreement, December 30, 1997
 Option Agreement, December 30, 1997
 Master Transaction Agreement, May 30, 2001
 Storage Gas Sale Agreement, May 30, 2001
 Amended and Restated Option Agreement, May 30, 2001
 Amended and Restated Participation Agreement, May 31, 2001
 Amended and Restated Security Agreement, May 31, 2001
 Amended and Restated Performance Guaranty, May 31, 2001
 Amended and Restated Pressurization and Storage Gas Borrowing Agreement,
May 31, 2001
 Amended and Restated Marketing Agreement, May 31, 2001
 Right to Use Agreement, May 31, 2001
 Sublease Agreement, May 31, 2001
 Amended and Restated Declaration of Trust, May 31, 2001
 Purchase Option Agreement, May 31, 2001
 Assurances and Indemnity Agreement, May 31, 2001
 Notice of Participation Agreement Event of Default, December 3, 2001
3. "Bcf" means billion cubic feet.
4. This general rule is consistent with the Bank's contention that "parties not part of the
bankruptcy proceeding cannot use stay violations to their advantage." Hanzel v.
Herring, 80 S.W.3d 167, 170 (Tex. App.--Fort Worth 2002, no pet.). Although
nondebtors may not rely on the stay specifically for their own protection, the stay
applies to certain proceedings against nonbankrupt parties when "the assets of the
bankruptcy estate would be jeopardized." Lisanti v. Dixon, 147 S.W.3d 638, 642
(Tex. App.--Dallas 2004, pet. denied).
5. Section 70a of the Bankruptcy Act is currently found at 11 U.S.C.S. § 541, formerly
§ 110(a)(6) of Title 11.
6. An exception to this rule exists for trusts protected by state law from creditors. 11
U.S.C.S. § 541(c)(2) (LexisNexis 1995); see also In re Young, 297 B.R. 492, 498
(Bankr. E.D. Tex. 2003). 
7. The Amended Pressurization Agreement contains two fees clauses, establishing
LeaseCo's leasehold interest in the Storage Gas:


 (b) LeaseCo agrees to pay to the Trustee, on or before the last LIBO
Business Day of each month, through and including the Final
Retirement Date, the Basic Pressurization Fee determined on the date
such payment is due, as a payment for the use by LeaseCo (or its
designee) of cushion gas constituting 50% of the aggregate of the
Storage Gas plus the Borrowed Gas pursuant to the terms hereof.

 

 (c) LeaseCo agrees to pay to the Trustee, on or before the last LIBO
Business Day of each month, through and including the Final
Retirement Date, the Borrowing Rights Fee determined on the date
such payment is due, as a payment for the right of LeaseCo (or its
designee) to borrow cushion gas and working gas constituting 50% of
the aggregate of the Storage Gas plus the Borrowed Gas pursuant to the
terms hereof.
8. This clause in the Amended and Restated Declaration of Trust states the following,
in its entirety:


 Tax Characterization. For purposes of federal, state and local income
and franchise taxes and any other tax imposed on or measured by
income (and, as set forth in Section 10.01 of the Participation
Agreement), it is intended, and the Trustee acknowledges, that (a) the
Trust is a security arrangement rather than a trust, (b) LeaseCo has
placed the Trust Estate with the Trustee for the sole purpose of securing
the payment of its obligations, (c) the Trustee is acting as an agent on
behalf of LeaseCo, and (d) the Trust Estate is an asset of LeaseCo.
9. The United States Supreme Court and the Texas Supreme Court have both held that
judicial actions taken against a debtor in violation of a bankruptcy stay are absolutely
void, whereas the Fifth Circuit has held that stay violations are voidable only at the
debtor's or the bankruptcy trustee's insistence, not at a nondebtor's request. Chunn
v. Chunn, 929 S.W.2d 490, 493 (Tex. App.--Houston [1st Dist.] 1996, no pet.). The
Fifth Circuit reasoned that because the 1978 addition of section 362(d), added after
the United States Supreme Court decision, gives the bankruptcy court the power to
annul the automatic stay, judicial actions taken in violation of the stay were
henceforth voidable. Id. (citing Kalb v. Feuerstein, 308 U.S. 433, 439, 60 S.Ct. 343,
346 (1940) & Sikes v. Global Marine, 881 F.2d 176, 178-79 (5th Cir. 1989)). 
Although we find the Fifth Circuit's approach well-reasoned, "we are 'obligated to
follow . . . the [Texas Supreme Court] and the United States Supreme Court.'" Id.
(quoting Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993)). 
"Thus, we are bound by the Texas Supreme Court's decision in Continental Casing
Corp. and consider the question now before us in light of the fact that judicial actions
stayed by section 362 are void, not voidable." Id. (citing Continental Casing Corp.
v. Samedan Oil Corp., 751 S.W.2d 499, 501 (Tex.1988)).
10. Specifically, the order lifting the stay is contained within the order approving the
settlement between the Bank and Enron. It states the following:


 [T]he automatic stay is hereby lifted for the sole purpose of allowing
the Secured Party and the Trustee to attempt to realize upon the value
of the Bammel Trust Gas, including allowing the Secured Party and/or
the Trustee to cause the issuance of a Settlement Notice and a written
Notice of an Event of Default (as such term is defined in the Operative
Documents).